Johnny M. **CROWDER**

v.

**UNITED STATES of America.**

Nos. 3:96–CV–44–P, 3:92CR86–P.

United States District Court,
W.D. North Carolina,
Charlotte Division.

March 12, 1996.

---

676

Johnny M. Crowder, pro se.

Kenneth D. Bell, U.S. Attorney's Office, Charlotte, NC, for defendant.

1. *Bailey* consists of two consolidated cases: *Bai-*

### ORDER

ROBERT D. POTTER, Senior District Judge.

**THIS MATTER** is before the Court on the Petitioner's Motion To Correct, Set Aside Or Vacate Sentence Pursuant to 28 U.S.C. § 2255, filed December 19, 1995.

On April 6, 1992 the Petitioner was indicted with a three count indictment: count one for possessing cocaine and cocaine base with intent to distribute in violation of 21 U.S.C. § 841(a)(1), count two for using and carrying a firearm in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1), and count three for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924. On July 23, 1992, the Petitioner pled guilty to counts one and two. The Petitioner now claims in this § 2255 petition that he is entitled to relief under *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995) because he did not "use or carry" a firearm in violation of 18 U.S.C. § 924(c)(1). The Court disagrees.

■ Recently, the Supreme Court addressed in *Bailey* the question of "whether evidence of the proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to show 'use' of a firearm during and in relation to a drug trafficking offence under 18 U.S.C. § 924(c)(1)." Id. at ——, 116 S.Ct. at 503. The Court held "that a conviction for 'use' of a firearm under § 924(c)(1) requires more than a showing of mere possession ..." *Id.* at ——, 116 S.Ct. at 506. Rather "the language, context, and history of § 924(c)(1) indicate that the Government must show active employment of the firearm" to establish "use." *Id.* "A Defendant cannot be charged under § 924(c)(1) merely for storing a weapon near drugs or drug proceeds. Storage of a firearm, without its more active employment, is not reasonably distinguishable from possession," *Id.* at ——, 116 S.Ct. at 508. The Court then found that the facts in *Bailey* could not support a conviction under the "use" prong of § 924(c)(1) and reversed the judgments.[1]

*ley v. United States* and *Robinson v. United States.*

However, the Court remanded for a determination of whether the convictions could be sustained under the "carry" prong.

At first blush the Supreme Court's *Bailey* decision seems to have potentially sweeping consequences on how § 924(c)(1) may be properly applied. This Court has received a rash of § 2255 petitions, such as the petition at bar, wherein the petitioner claims that he was improperly convicted under § 924(c)(1) because the firearm was not "used" according to *Bailey*. However, a careful reading of *Bailey* shows that a firearm that has not been "used" may nonetheless have been "carried" and therefore sustain a conviction under § 924(c)(1).

The Supreme Court made it clear that *Bailey* only addressed the "use" prong of § 924(c)(1)—not the "carry" prong. "While it is undeniable that the active-employment reading of 'use' restricts the scope of § 924(c)(1), the Government often has other means available to charge offenders who mix guns and drugs. The 'carry' prong of § 924(c)(1), for example, brings some offenders who would not satisfy the use prong within the reach of the statute." *Bailey*, at ——, 116 S.Ct. at 509.

In the case at bar, the Court agrees that there is no evidence showing that the Petitioner actively employed a firearm so that he "used" it in violation of § 924(c)(1). According to the police report submitted by the Petitioner, the police arranged to meet the Petitioner during an undercover drug buy. When the Petitioner arrived at the agreed location he was arrested after he exited his car. When the arresting officers searched the car they found some drugs "in plain view on a styrofoam box, and a .45 caliber Ithaca pistol loaded in a cassette box." (Petitioner's exhibit.) There is no evidence of any more active employment of the firearm that would qualify as "use." Nevertheless, the Court finds that the Petitioner "carried" the firearm and his § 924(c)(1) conviction must be sustained.

■ In determining what the word "carry" means as used in § 924(c)(1), it must be given its "ordinary and natural" meaning. *Cf. Bailey* at ——, 116 S.Ct. at 506. This Court, like the Supreme Court in *Bailey*, will turn to Black's Law Dictionary. *Id.;* see also, *Smith v. United States*, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d. 138 (1993).

■ Black's defines "carry" as "[t]o bear, bear about, sustain, transport, remove, or convey. To have or bear upon or about one's person, as a watch or weapon; locomotion not being essential." Applying this definition to § 924(c)(1), it is clear that any person who transports a firearm "carries" it within the meaning of the statute. Moreover—"locomotion not being essential"—a person who has a firearm "on or *about*" his person also "carries" it in violation of the statute. Thus, a person who has a firearm immediately accessible and within close proximity to his body—that is, has it "about" him—"carries" that firearm even if that firearm is not "on" his body.

This Court's reading of "carry" as used in § 924(c)(1) is consistent not only with the ordinary meaning of the words used in the Act but also with the Supreme Court's interpretation in *Bailey* of "use" and with Congress' important objective. It is clear that Congress intended § 924(c)(1) to be a powerful and widely applicable law aimed at controlling the increasing proliferation of guns used in connection with drug trafficking in this country—"§ 924(c)(1)'s language sweeps broadly." *Smith v. United States*, 508 U.S. 223, 229, 113 S.Ct. 2050, 2054, 124 L.Ed.2d. 138 (1993). In the words of the Fourth Circuit:

> The statute is obviously intended to discourage and punish the deadly violence too often associated with drug trafficking. Such violence can readily occur when drug traffickers attempt to protect valuable narcotic supplies still in their possession or attempt to stop law enforcement officials from disrupting intended transactions. Section 924(c) ought not be interpreted so

Bailey was arrested in his car and the firearm was found in the car's trunk along with some cocaine. Robinson's firearm was found pursu-

ant to a search warrant in a locked trunk in her bedroom.

narrowly as to exclude such dangerous situations. *United States v. James,* 834 F.2d 92, 93 (4th Cir.1987).

Moreover, this Court's reading of the statute does not reduce "carrying" a firearm to simple possession of a firearm. A person may possess a firearm that is neither transported nor accessible during his drug offense—for example a rifle in a locked gun cabinet—without violating the Act. Such possession clearly would not qualify as "carrying."

Likewise, this reading of "carry" is not "of such breadth that no role remains for" the word "use." Cf. *Bailey* at ——, 116 S.Ct. at 507. That is, a person could "use" a firearm without "carrying" it. For example, "reference to a firearm in [a defendant's] possession" yet not proximate to him would be "use" (*Bailey* at ——, 116 S.Ct. at 508) while it would not be "carry." Thus, this Court's reading of "carry" does not render "use" mere statutory surplusage.

Finally, this Court's reading of "carry" is largely consistent with the holdings of other courts that have decided the meaning of "carry" as used in § 924(c)(1). *See, e.g., United States v. Joseph,* 892 F.2d 118 (D.C.Cir.1989) ("when a person 'has present ability to exercise dominion and control over' a firearm and further has that firearm 'within easy reach and available to protect him during his ongoing [drug trafficking] offense'" he carries a firearm in violation of the Act; quoting *United States v. Evans,* 888 F.2d 891 (D.C.Cir. 1989)); *United States v. Pearce,* 912 F.2d 159 (6th Cir.1990) (defendant "carried" firearm when "the firearm was under the defendant's control and readily accessible"; citing *United States v. Birmley,* 529 F.2d 103, 107 (6th Cir.1976); *United States v. Freisinger,* 937 F.2d 383 (8th Cir.1991) ("carry" includes to carry in a vehicle; citing *United States v. Cardenas,* 864 F.2d 1528 (10th Cir.), *cert. denied,* 491 U.S. 909, 109 S.Ct. 3197, 105 L.Ed.2d 705 (1989)); *United States v. Power,* 881 F.2d 733 (9th Cir.1989) (a defendant carries a firearm "if the firearm is within the possession or control of a person who commits an underlying crime . . ."; citing *United States v. Stewart,* 779 F.2d 538 (9th Cir.

1985)); *United States v. Feliz–Cordero,* 859 F.2d 250 (2nd Cir.1988) ("a person cannot be said to 'carry' a firearm without at least a showing that the gun is within reach during the commission of the drug offense"; citing *United States v. Brockington,* 849 F.2d 872 (4th Cir.1988)). Because these cases interpret "carry"—not "use"—they survive *Bailey.*

Turning to the facts in the case at bar, it is clear that the Petitioner "carried" a firearm in violation of § 924(c)(1). According to the police report submitted by the Petitioner, he transported—and therefore "carried"—the firearm in his car while delivering some cocaine. That the gun was inside the car and therefore immediately accessible to the Petitioner further supports this finding. Such conduct is far more than simple innocuous possession and is precisely the sort of conduct that Congress intended to prohibit.

In sum, the Court finds that the Petitioner "carried" a firearm in violation of 18 U.S.C. § 924(c)(1) and his conviction must be sustained. This petition will be denied accordingly.

**NOW, THEREFORE, IT IS ORDERED** that the Petitioner's Motion To Vacate, Set Aside, Or Correct Sentence be, and hereby is, **DENIED.** This action will be dismissed in a separate judgment filed simultaneously with this Order.

**IT IS FURTHER ORDERED** that the Petitioner's motion for release pending decision of his motion be, and hereby is, **DENIED.**